UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL GLEBIV, RAYMOND MASSUD, VICKI DALE, GENEVIEVE BOROWSKI, and DONALD HESS, individually and on behalf of all others similarly situated, | No. 1:23-cv-16225 |
| Plaintiffs, | Hon. John R. Blakely |
| v. | CLASS ACTION |
| MIDWEST GAMING & ENTERTAINMENT, LLC, d/b/a RIVERS CASINO DES PLAINES, | Jury Trial Demanded |
| Defendant. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Ben Barnow
Anthony L. Parkhill
Riley W. Prince
Nicholas W. Blue
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312-621-2000
Fax: 312-641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com
rprince@barnowlaw.com
nblue@barnowlaw.com

*Attorneys for Plaintiffs Dale and Borowski\**

*Additional attorneys appear on signature page

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

I.   Introduction ........................................................................................................................... 1

II.  Factual Background ............................................................................................................... 1

III. Argument ............................................................................................................................... 3

A.  Legal Standard and Choice of Law ...................................................................................... 3

B.  Plaintiffs Adequately Plead Their Negligence Claim .......................................................... 3

 1.  Plaintiffs Adequately Allege Rivers Casino's Duty of Care ............................................ 3

 2.  Plaintiffs' Alleged Injuries Are Sufficient to State a Claim for Negligence ................... 6

 3.  The *Moorman* Doctrine Does Not Bar Plaintiffs' Negligence Claim ............................ 7

C.  Plaintiffs Sufficiently Plead Claims for Negligence Per Se .............................................. 10

D.  Plaintiffs' Breach of Implied Contract Claims Are Well-Pleaded .................................... 11

E.  Plaintiffs' Unjust Enrichment Claims Should Not Be Dismissed ..................................... 14

F.  Plaintiffs Adequately Plead Their Illinois Consumer Fraud Act Claims .......................... 17

G.  Plaintiff Massud States a Claim Under the MMPA ........................................................... 18

 1.  Plaintiff Massud was Injured by Violations of the MMPA in Missouri ........................ 18

 2.  Claims Under the MMPA Are Not Subject to a Heightened Pleading Standard ........... 19

 3.  Plaintiff Massud Has Alleged Ascertainable Losses ..................................................... 20

IV. Conclusion ........................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Archey v. Osmose Utils. Servs.*,
   No. 20-cv-05247, 2022 U.S. Dist. LEXIS 148038
   (N.D. Ill. Aug. 18, 2022)......................................................................................11, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544(2007)......................................................................................3

*Bier v. Leanna Lakeside Prop. Ass'n*,
   305 Ill. App. 3d 45 (1999) ......................................................................................10

*BMO Harris Bank, N.A. v. Porter*,
   2018 IL App (1st) 171308......................................................................................11

*Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*,
   137 Ill. App. 3d 84 (1985) ......................................................................................14

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
   887 F.3d 803 (7th Cir. 2018) ......................................................................................5

*Congregation of the Passion v. Touche Ross & Co.*,
   159 Ill. 2d 137 (1994) ......................................................................................8

*Conway v. CitiMortgage, Inc.*,
   438 S.W.3d 410 (Mo. 2014) ......................................................................................19

*Cooney v. Chi. Pub. Schools*,
   407 Ill. App. 3d 358 (2010) ......................................................................................6

*Cowper v. Nyberg*,
   2015 IL 117811......................................................................................3

*Doe v. Fertility Ctrs. of Ill.*,
   No. 21 C 579, 2022 U.S. Dist. LEXIS 59145
   (N.D. Ill. Mar. 31, 2022)......................................................................................14, 15

*Duncan v. Savannah, LLC*,
   637 S.W.3d 633 (Mo. Ct. App. 2021)......................................................................................19

*Flores v. AON Corp.*,
   2023 IL App (1st) 230140............................................................................ *passim*

*Gociman v. Loyola Univ. of Chi.*,
    41 F.4th 873 (7th Cir. 2022) ................................................................11

*Heredia v. Capital Mgmt. Servs., L.P.*,
    942 F.3d 811 (7th Cir. 2019) ..................................................................3

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
    131 Ill. 2d 145 (1989) ...........................................................................14

*In re Gallagher Data Breach Litig.*,
    631 F. Supp. 3d 573 (N.D. Ill. 2022) ................................6, 12, 14, 18

*In re Ill. Bell Tel. Link-Up II*,
    2013 IL App (1st) 113349......................................................................13

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    440 F. Supp. 3d 447 (D. Md. 2020) .......................................................9

*In re Michaels Stores Pin Pad Litig.*,
    830 F. Supp. 2d 518 (N.D. Ill. 2011) ...........................................4, 9 ,12

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012)...................................................10

*In re SuperValu, Inc. Customer Data Sec. Breach Litig.*,
    925 F.3d 955 (8th Cir. 2019) ..................................................................9

*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014).....................................................9

*In re TJX Cos. Retail Sec. Breach Litig.*,
    564 F.3d 489 (1st Cir. 2009)...................................................................9

*In re VTech Data Breach Litig.*,
    No. 15 CV 10889, 2018 U.S. Dist. LEXIS 65060
    (N.D. Ill. Apr. 18, 2018) ........................................................................17

*Irwin v. Jimmy John's Franchise, LLC*,
    175 F. Supp. 3d 1064 (C.D. Ill. 2016) .............................................9, 16

*Kalata v. Anheuser-Busch Cos.*,
    144 Ill. 2d 425 (1991) ...........................................................................10

*Korte v. Pinnacle Foods Grp., LLC*,
   No. 17-CV-199-SMY-SCW, 2018 U.S. Dist. LEXIS 50668
   (S.D. Ill. Mar. 27, 2018)........................................................................................18

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010) ...............................................................................6

*Kuhns v. Scottrade, Inc.*,
   868 F.3d 711 (8th Cir. 2017) ................................................................................18

*Lozada v. Advocate Health & Hosps. Corp.*,
   2018 IL App (1st) 180320-U ...................................................................12, 14, 15

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
   91 Ill. 2d 69 (1982) .............................................................................................7, 8

*Mueller by Math v. Cmty. Consol. Sch. Dist. 54*,
   287 Ill. App. 3d 337 (1997) ..................................................................................10

*Northbrook Bank & Tr. Co. v. Abbas*,
   2018 IL App (1st) 162972......................................................................................11

*Olson v. Ferrara Candy Co.*,
   No. 2022-CH-06866 (Cook Cnty.) .........................................................................7

*Perdue v. Hy-Vee, Inc.*,
   455 F. Supp. 3d 749 (C.D. Ill. 2020) .............................................................10, 16

*Plubell v. Merck & Co.*,
   289 S.W.3d 707 (Mo. Ct. App. 2009)...................................................................20

*Roper v. Rise Interactive Media & Analytics, LLC*,
   No. 23 CV 1836, 2023 U.S. Dist. LEXIS 201955
   (N.D. Ill. Nov. 9, 2023)........................................................................................16

*Sackin v. Transperfect Glob., Inc.*,
   278 F. Supp. 3d 739 (S.D.N.Y. 2017)..................................................................12

*Schoenlein v. Routt Homes, Inc.*,
   260 S.W.3d 852 (Mo. Ct. App. 2008)...................................................................20

*Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*,
   199 S.W.3d 228 (Mo. Ct. App. 2006)...................................................................19

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
   533 F.3d 162 (3d Cir. 2008).................................................................................10

iv

*Stathis v. Geldermann, Inc.*,
   295 Ill. App. 3d 844 (1998) ....................................................................................14

*Thomas v. H&R Block E. Enters.*,
   630 F.3d 659 (7th Cir. 2011) ..................................................................................9

*Vides v. Advocate Health and Hosps. Corp.*,
   2014 WL 4262215 (Ill. Cir. Ct., May 27, 2014) ....................................................7

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) ..................................................................................8

*Wittmeyer v. Heartland All. for Hum. Needs & Rights*,
   No. 23 CV 1108, 2024 U.S. Dist. LEXIS 8803
   (N.D. Ill. Jan. 17, 2024) ................................................................................6, 9, 18

**Statutes**

815 ILCS 530/45 ..............................................................................................................4, 11

Mo. Rev. Stat. § 407.020 ....................................................................................................18

## I.      Introduction

Plaintiffs Michael Glebiv, Raymond Massud, Vicki Dale, Genevieve Borowski, and Donald Hess ("Plaintiffs") respectfully submit this response in opposition to Defendant Midwest Gaming & Entertainment, LLC, d/b/a Rivers Casino Des Plaines's ("Rivers Casino" or "Defendant") motion to dismiss.

Rivers Casino collects, maintains, and uses the confidential personal identifying information ("PII") of its guests and employees as a regular and necessary part of its gambling business. Despite realizing significant value from the use of this PII, Rivers Casino failed to implement expected and industry standard data security practices necessary to prevent the foreseeable and preventable consequences of a cyberattack. Rather than remedy the consequences of its failures to perform basic and expected services, Rivers Casino now complains that Plaintiffs—whose Social Security numbers, bank account numbers, payment card information, and other sensitive data placed were stolen by data thieves—have suffered nothing more than "annoyance and upset feelings." Rivers Casino should not be allowed to shift the consequences of its inaction to Plaintiffs and thousands of other victims of a data breach who relied on it to protect them from data thieves.

## II.     Factual Background

Defendant owns and operates Rivers Casino Des Plaines, a casino and sportsbook located in Des Plaines, Illinois. First Amended Complaint ("FAC") ¶ 2. In the regular course of operating its casino and sportsbook, Rivers Casino collects sensitive and confidential PII from its guests, employees, and online sportsbook users. *Id*. ¶¶ 50–51. Rivers Casino recognizes the importance of maintaining the PII that it collects as confidential and represents through its privacy policy that it implements measures to protect that PII from unauthorized access, including that it "appl[ies] suitable safeguards to protect the privacy and security of your personal data." *Id*. ¶¶ 52–56.

1

Despite these representations, on or about August 12, 2023, Rivers Casino discovered that, "an unauthorized actor gained access to Rivers Casino's systems [] and as a result likely obtained some information" (the "Data Breach"). *Id.* ¶ 58. Upon investigation, Rivers Casino "determined that files containing certain personal information of Rivers Casino Des Plaines Team Members, customers, and online sportsbook customers" were accessed or removed during the Data Breach. *Id.* The PII compromised in the Data Breach included Plaintiffs' and Class members' "names, contact information, dates of birth, driver's license or government ID numbers, financial account numbers, tax identification numbers, Social Security numbers, and passport numbers." *Id.* ¶¶ 1, 59. Despite learning of the Data Breach on or about August 12, 2023, Rivers Casino waited until November 16, 2023, over three months later, to begin notifying its customers and employees that their PII was in the hands of cybercriminals. *Id.* ¶ 60.

Plaintiffs are customers or employees of Rivers Casino who provided their PII to Rivers Casino in exchange for access to its casino, sportsbook, or the promise of employment. *Id.* ¶ 57. Following the Data Breach, and despite taking precautions to ensure that their PII remained confidential, several Plaintiffs began to experience the misuse of their PII, including unauthorized charges to their accounts and targeted spam and phishing attempts. *Id.* ¶¶ 20, 28, 43. Indeed, the very reason that cyber criminals target companies like Rivers Casino is to acquire the consumer PII that they maintain for its value in committing fraud and identify theft. *Id.* ¶¶ 62–68. Moreover, due to the immutable nature of the information compromised in the Data Breach (e.g., Social Security numbers, dates of birth, names, and tax and passport information) Plaintiffs must expend time, effort, and money to prevent the misuse of their PII for the remainder of their lives. *Id.* ¶¶ 69–83.

### III.    Argument

#### A.    Legal Standard and Choice of Law

Under Rule 12(b)(6), plaintiffs need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, while allegations must "raise a right to relief above the speculative level," detailed allegations are not required. *Id.* at 555. A claim is plausible when the facts allow the court to draw the reasonable inference that the defendant is liable for engaging in the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must accept as true the factual allegations in the complaint and draw all the reasonable inferences in the plaintiff's favor. *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

#### B.    Plaintiffs Adequately Plead Their Negligence Claim

To state a claim for negligence, "a plaintiff must plead that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Cowper v. Nyberg*, 2015 IL 117811, ¶ 13.

##### 1.    Plaintiffs Adequately Allege Rivers Casino's Duty of Care

Rivers Casino first argues Plaintiffs' negligence claims should be dismissed because it had no duty to prevent a foreseeable criminal attack. Mot. at 4. As an initial matter, this argument fails because it misstates Plaintiffs' claims. Plaintiffs do not allege Rivers Casino had a duty to prevent a criminal attack, but that Rivers Casino had a duty to "to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII." FAC ¶¶ 4, 96. This is in line with the statutorily-created duty, pursuant to the Illinois Personal Information Protection Act ("IPIPA"), of a "data collector that owns or licenses, or maintains or stores but does not own or license, records that contain personal information concerning an Illinois resident" to "implement and maintain reasonable security measures to protect those records from unauthorized access,

3

acquisition, destruction, use, modification, or disclosure." 815 ILCS 530/45. This is significantly different from Rivers Casino's assertion that it had no duty to prevent third-party criminal actions.[1]

In *Flores v. AON Corp.*, the Illinois Appellate Court reviewed the district court's dismissal of the *Flores* plaintiffs' negligence claim where the defendant "argue[d] that there is no common law duty to safeguard personal information in Illinois." 2023 IL App (1st) 230140, ¶ 22. In answering this question, the *Flores* court assessed "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.* ¶ 24. The court found it was "foreseeable that a failure to maintain reasonable security measures would allow unauthorized third parties to gain access to stored personal information," it was "likely that a data breach of this information would cause injury to the individuals that the personal information belongs to," that defendant "was well aware of the risks of providing inadequate security measures for personal information," and that it would not be a large burden for defendant to protect plaintiffs' information "given its experience and expertise in cyber security." *Id.* The court held the defendant therefore had "a common law duty to protect the personal information of its clients, in addition to its duty under the [IPIPA]." *Id.*

The result is no different here. Plaintiffs allege Rivers Casino "knew or should have known the risks of collecting and storing Plaintiffs' and all other Class members' PII and the importance of maintaining secure systems." FAC ¶ 97. As in *Flores*, it "was reasonably foreseeable to Rivers Casino that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and

---

[1] "Generally, a defendant will not be held liable for negligence if an intervening criminal act causes the plaintiff's injury. However, an exception exists where the defendant's acts or omissions create a condition conducive to a foreseeable intervening criminal act. In such cases, the causal chain is not broken by a reasonably foreseeable intervening act." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011).

Class members' PII . . . would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class members' PII to unauthorized individuals." *Id.* ¶ 100. Rivers Casino would face no or minimal burden from this duty because it already implements certain data security measures and has duties pursuant to the IPIPA. *See id.* ¶¶ 56, 105. As in *Flores*, all four factors support the conclusion that Rivers Casino has a common law duty to protect Plaintiffs' PII.[2]

Rivers Casino attempts to distinguish *Flores* because the defendant in that case was a company "that provides a wide range of services, including cybersecurity services, to its commercial clients," *Flores*, 2023 IL App (1st) 230140, ¶ 3, while Rivers Casino claims to provide no cybersecurity services. Mot. at 5. As a casino and sportsbook, in the regular course of its business Rivers Casino requires customers and employees to entrust it with their PII as a condition of accessing its casino, sportsbook, or employment. FAC ¶¶ 2, 50. As noted above, Rivers Casino admits it "endeavor[s] to apply suitable safeguards to protect the privacy and security of" the PII it collects and maintains. *Id.* ¶ 56. By its very nature, Rivers Casino "is well aware of the risks of providing inadequate security measures for personal information." *Flores*, 2023 IL App (1st) 230140, ¶ 24. It cannot be seriously contemplated that Rivers Casino does not have the technological sophistication to protect the personal information entrusted to it.

Recognizing Rivers Casino's common law duty to protect PII would not, as Rivers Casino claims, "create a new duty under common law" because this same duty was explicitly recognized in *Flores*. *Id.* ¶ 24. Rivers Casino's insistence that the court disregard *Flores* and instead follow *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803 (7th Cir. 2018) ("*Schnucks*")

---

[2] This common law duty applies not only to Illinois residents, but also to anyone operating under an Illinois choice of law, which Defendant readily concedes in its brief. Mot. at 3 n.1. As such, this common law duty applies to Plaintiffs Raymond Massud (a Missouri resident, *see* FAC ¶ 14) and Donald Hess (a Wisconsin resident, *see* FAC ¶ 37).

is unpersuasive as *Schnucks* and the Illinois case it relied on, *Cooney v. Chicago Public Schools*, 407 Ill. App. 3d 358 (2010), have been called into question in the wake of *Flores* and other developments in Illinois law. *E.g.*, *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022) (questioning "the continued viability of *Schnuck*'s holding that there exists no duty under Illinois law to safeguard personal information"); *Wittmeyer v. Heartland All. for Hum. Needs & Rights*, No. 23 CV 1108, 2024 U.S. Dist. LEXIS 8803, at *6–7 (N.D. Ill. Jan. 17, 2024) (declining to follow *Cooney* and *Schnucks*, and instead following *Flores*).

### 2. Plaintiffs' Alleged Injuries Are Sufficient to State a Claim for Negligence

Rivers Casino next argues Plaintiffs' injuries are too speculative to support a negligence claim, such that Plaintiffs did not allege the damage element of negligence. *See* Mot. at 6–8. Rivers Casino's argument essentially asserts that Plaintiffs' must have suffered identity theft to state a negligence claim. This is not so. Plaintiffs allege injuries including lost time, anxiety, and concerns over the right of privacy, which are all compensable under Illinois law. FAC ¶ 102; *e.g.*, *In re Gallagher*, 631 F.Supp.3d at 587 ("There can be no dispute that Plaintiffs have alleged present injuries or damages; for instance, all allege experiencing emotional harms such as anxiety and increased concerns for the loss of privacy. These types of non-economic damages are recoverable under Illinois law." (citations omitted)).

Rivers Casino's citation to *Krottner* is misplaced. *Krottner* is a Ninth Circuit decision which examines whether any damages occurred as a result of a stolen laptop, not a hack and exfiltration of sensitive personal information from a system, and still found that Plaintiffs "have alleged a credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted personal data." *Krottner v. Starbucks Corp*., 628 F.3d 1139, 1143 (9th Cir. 2010). *Vides*, like *Krottner*, is a case based on the theft of laptops, not of an actual hack and

exfiltration of data, and as such, is inapposite to this case. *Vides v. Advocate Health and Hosps. Corp.*, 2014 WL 4262215 at *1 (Ill. Cir. Ct., May 27, 2014). Rivers Casino's citation to *Olson v. Ferrara Candy Co.*, No. 2022-CH-06866 (Cook Cnty.), is unpersuasive as *Olson* is not binding authority.

Rivers Casino next turns to Plaintiff Dale's allegations of unauthorized debit card charges, stating that Plaintiff Dale "alleges no facts that make th[e] causal connection plausible" that Rivers Casino's negligence could have caused her debit card charges. Mot. at 9. Plaintiffs have alleged that Rivers Casino collected PII, including financial account information,[3] from Plaintiffs as part of their transactions with Rivers Casino. *See* FAC ¶¶ 1, 23, 53. Plaintiffs also allege that the data thieves could compile "Fullz" packages in combination with other available information to commit fraud. FAC ¶¶ 77–81. When drawing inferences in favor of Plaintiffs, these allegations are sufficient to establish a causal connection at this stage. *Flores*, 2023 IL App (1st) 230140, ¶ 16. Rivers Casino's argument that Dale's negligence claim must be dismissed because she does not allege actually losing money from the fraudulent charges "is immaterial and does not stop [her] from being actual injuries, nor does it stop [her] from showing that future fraudulent charges are imminent." *Id.* ¶ 17 (rejecting identical argument).

### 3. The *Moorman* Doctrine Does Not Bar Plaintiffs' Negligence Claim

Rivers Casino incorrectly asserts the *Moorman* doctrine bars Plaintiffs' negligence and negligence per se claims. Mot. at 9, 11. "The *Moorman* doctrine, also known as the economic loss doctrine, states that there can be no recovery in tort for purely economic losses." *Flores*, 2023 IL App (1st) 230140, ¶ 56; *see also Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69 (1982). Economic losses are "damages for inadequate value, costs of repair and replacement of the

---

[3] Rivers Casino admitted in its data breach notice that financial account information was compromised in the Data Breach. FAC ¶ 59.

defective product, or consequent loss of profits." *Flores*, 2023 IL App (1st) 230140, ¶ 56 (quoting *Moorman*, 91 Ill. 2d at 82).

The Illinois Supreme Court has held the *Moorman* doctrine only applies to the sale of services "where the duty of the party performing the service is defined by [a] contract." *Congregation of the Passion v. Touche Ross & Co.*, 159 Ill. 2d 137, 162 (1994). "Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Id.*; *accord Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). In *Flores*, the Illinois Appellate Court explicitly extended *Congregation of the Passion* to apply to data breach cases. *Flores*, 2023 IL App (1st) 230140, ¶ 56 ("Although the *Congregation of the Passion* decision concerned a professional malpractice claim against an accounting firm, its reasoning equally applies to data breach cases."). The *Flores* court stated "[a]pplying the *Moorman* doctrine to [a] data breach case would stretch the applicability of the doctrine far beyond its products liability roots, given that there is no express contract between the parties . . . ." *Id.* ¶ 57.

The *Moorman* doctrine does not bar Plaintiffs' claims because Plaintiffs' negligence claims are not based on a breach of contractual duties. *See* FAC ¶¶ 95–102. The *Flores* court rejected an identical argument that the plaintiffs' common law tort claims (including negligence and negligence per se) were barred by the *Moorman* doctrine. *Flores*, 2023 IL App (1st) 230140, ¶ 55. There, as here, the plaintiffs "allege[d] no express contract between the parties that would establish a duty by defendant to safeguard plaintiffs' personal information." *Id.* ¶ 57; FAC ¶¶ 95–102. The *Moorman* doctrine does not bar Plaintiffs' claims because, as in *Flores*, their "common law tort claims are based on defendant's common law duty to safeguard personal information rather than any express contractual duty." *Flores*, 2023 IL App (1st) 230140, ¶ 57. The applicability of

*Moorman* doctrine exceptions is not at issue here because, as the *Flores* court noted, "the *Moorman* doctrine does not apply to plaintiffs' claims in the first place." *Id.* ¶ 58.

Rivers Casino's reliance on *Schnucks*, *In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518 (N.D. Ill. 2011), *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064 (C.D. Ill. 2016), and *In re Target Corp. Data Security Breach Litigation*, 66 F. Supp. 3d 1154 (D. Minn. 2014) is misplaced. Mot. at 10. Those cases discuss the *Moorman* doctrine, but were decided prior to *Flores*. The Illinois Supreme Court has yet to rule on the applicability of the *Moorman* doctrine in the data breach context. Where "the state's highest court has yet to rule on an issue, 'decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently.'" *Thomas v. H&R Block E. Enters.*, 630 F.3d 659, 663 (7th Cir. 2011) (citation omitted). Therefore, in the absence of guidance from the Illinois Supreme Court, the *Flores* decision represents binding precedent. *Id.*; *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 469 (D. Md. 2020) ("An examination of the [*Moorman* doctrine]'s development suggests that its historical roots in products liability are not a close fit with the injuries that arise in the context of data breaches like this one, which casts doubt on how it would be applied by the Illinois Supreme Court."). Federal court decisions decided after *Flores* have followed *Flores*. *E.g.*, *Wittmeyer*, 2024 U.S. Dist. LEXIS 8803, at *7–8 (declining to follow *Schnucks* and instead following *Flores*).

The numerous other cases cited by Rivers Casino are also inapposite. *In re SuperValu, Inc.* concerned a retailer's duty to protect customers' personal information under Illinois law, and neither discusses nor bases its holding on the *Moorman* doctrine. *In re SuperValu, Inc. Customer Data Sec. Breach Litig.*, 925 F.3d 955, 963 (8th Cir. 2019). The remaining cases Rivers Casino cites do not apply Illinois law and have no bearing here. *See In re TJX Cos. Retail Sec. Breach*

*Litig.*, 564 F.3d 489, 498–99 (1st Cir. 2009) (applying Massachusetts law); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008) (applying Pennsylvania law); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 961 (S.D. Cal. 2012) (applying California law).

### C.     Plaintiffs Sufficiently Plead Claims for Negligence Per Se

Negligence per se requires a statutory duty, a breach of that duty (a violation of the statute), and a resulting injury to plaintiffs. *See Mueller by Math v. Cmty. Consol. Sch. Dist. 54*, 287 Ill. App. 3d 337, 346 (1997). Plaintiffs allege Rivers Casino had duties to protect their PII pursuant to the FTC Act and the IPIPA. FAC ¶¶ 104–05. Plaintiffs also allege Rivers Casino breached its duties under the FTC Act and IPIPA, *id.* ¶ 107, that Plaintiffs are within the class of persons the FTC Act and IPIPA were intended to protect, *id.* ¶ 109, Rivers Casino's breached its duties and injured Plaintiffs, *id.* ¶ 112, and those injuries are the type that the FTC Act and IPIPA were intended to guard against, *id.* ¶ 110. These allegations are sufficient to state a claim for negligence per se at the motion to dismiss stage. *See Bier v. Leanna Lakeside Prop. Ass'n*, 305 Ill. App. 3d 45, 58 (1999) ("[I]f a statutory violation proximately causes an injury of the kind the legislature had in mind when it enacted the statute, the offending party is civilly liable for that injury."); *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434 (1991) ("A party injured by such a violation may recover only by showing that the violation proximately caused his injury and the statute or ordinance was intended to protect a class of persons to which he belongs from the kind of injury that he suffered.").

Rivers Casino's claim that neither the FTC Act nor the IPIPA can serve as the basis of a negligence per se claim is belied by multiple court decisions. *E.g.*, *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 760–61 (C.D. Ill. 2020) (applying Illinois law in a data breach action and holding "the FTC Act can serve as the basis of a negligence per se claim"); *Flores*, 2023 IL App (1st)

10

230140, ¶ 23 (noting Illinois legislature "has now created a duty to maintain reasonable security measures under the [IPIPA]"); *see also* 815 ILCS 530/45 (IPIPA section imposing duty to "implement and maintain reasonable security measures" to protect personal information).

### D. Plaintiffs' Breach of Implied Contract Claims Are Well-Pleaded

The elements of a breach of implied contract claim are "1) the existence of a valid and enforceable contract, 2) breach of the contract by the defendant, 3) performance by the plaintiff, and 4) resulting injury to the plaintiff." *Northbrook Bank & Tr. Co. v. Abbas*, 2018 IL App (1st) 162972, ¶ 42; *accord Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883 (7th Cir. 2022). An implied contract requires the same elements as an express contract and a meeting of the minds. *BMO Harris Bank, N.A. v. Porter*, 2018 IL App (1st) 171308, ¶¶ 52–53. "For an implied-in-fact contract, the circumstances must allow an inference that the parties had a deal, or meeting of the minds, even though there was no statement to that effect." *Archey v. Osmose Utils. Servs.*, No. 20-cv-05247, 2022 U.S. Dist. LEXIS 148038, *5 (N.D. Ill. Aug. 18, 2022). Rivers Casino challenges only the first and fourth element. *See* Mot. at 12–14.

Rivers Casino first attempts to avoid responsibility for the Data Breach by asserting there was no "meeting of the minds" between the parties regarding data security issues. Mot. at 13–14. Rivers Casino further claims it never agreed to protect Plaintiffs' PII. *See* Mot. at 13. This is incorrect. Rivers Casino's Privacy Policy states Rivers Casino will "use commercially reasonable measures to provide [its] Services" and "endeavor to apply suitable safeguards to protect the privacy and security of your personal data." *See* FAC ¶¶ 52–56. Rivers Casino also states it "believe[s] the measures implemented by us reduce the likelihood of security problems to a level appropriate to the type of data involved." *Id.* ¶ 56. Plaintiffs allege "Rivers Casino required Plaintiffs and Class members to provide their PII as a condition of receiving gaming services or employment from Rivers Casino." *Id.* ¶ 50. Plaintiffs also allege that in exchange for monies and

their PII, "Rivers Casino agreed to, among other things, and Plaintiffs understood that Rivers Casino would: (1) provide services to Plaintiffs and Class members; (2) take reasonable measures to protect the security and confidentiality of Plaintiffs' and Class members' PII; and (3) protect Plaintiffs' and Class members' PII in compliance with federal and state laws and regulations and industry standards." *Id.* ¶ 115. Plaintiffs further allege "protection of PII was a material term of the implied contracts" and they would not have sought services from Rivers Casino if they had known Rivers Casino would not adequately protect their PII. *Id.* ¶ 116.

Rivers Casino's expressions made in its Privacy Policy indicate a clear mutual understanding that Rivers Casino would undertake appropriate efforts to protect Plaintiffs' and Class members' PII. Indeed, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Archey*, 2022 U.S. Dist. LEXIS 148038, at *9 (quoting *Sackin v. Transperfect Glob., Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017)); *see also In re Michaels*, 830 F. Supp. 2d at 531. Numerous courts applying Illinois law have held similar statements in a privacy policy may form the basis of an implied contract. *E.g.*, *Flores*, 2023 IL App (1st) 230140, ¶ 33 (finding plaintiffs adequately pleaded existence of implied contract where "[d]efendant made representations in its privacy policy that it would safeguard plaintiffs' personal information using reasonable security measures"); *Lozada v. Advocate Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U, ¶ 27 ("By accepting [defendant's] privacy policy in exchange for providing their sensitive information, plaintiffs accepted [defendant's] implicit and inescapable representations that [defendant] would do *something* to protect that information."); *In re Gallagher*, 631 F. Supp. 3d at 591 (finding privacy policy "supports a finding of an implicit promise to protect employees' personal information in exchange

12

for their employment"). Thus, Plaintiffs have sufficiently alleged the existence of an implied contract between Plaintiffs and Rivers Casino which required Rivers Casino to implement adequate data security practices.

Rivers Casino's one-sided understanding of certain terms in its Privacy Policy purportedly stating it does not guarantee adequate protection for PII does not change this outcome. The Privacy Policy states Rivers Casino will "use commercially reasonable measures" to protect Plaintiffs' PII, and that these measures should "reduce the likelihood of security problems to a level appropriate to the type of data involved." Mot. at 13. Plaintiffs allege Rivers Casino "breached its obligations under its implied contracts with Plaintiffs and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII." FAC ¶ 118. Rivers Casino cites no authority holding general statements that Plaintiffs' PII may not always "remain private or secure" release it from its obligations to use reasonable and appropriate measures to protect Plaintiffs' PII. *See* Mot. at 13–14.

Rivers Casino next claims Plaintiffs' breach of implied contract claim must be dismissed because "Plaintiffs here allege only speculative, non-monetary damages." Mot. at 14. "The basic theory of damages in a breach of contract action requires that a plaintiff 'establish an actual loss or measurable damages resulting from the breach in order to recover.'" *In re Ill. Bell Tel. Link-Up II*, 2013 IL App (1st) 113349, ¶ 19 (citation omitted). Damages which "naturally and generally" result from a breach are recoverable. *Id.* Plaintiffs have alleged damages sufficient to survive Rivers Casino's motion to dismiss. For example, Plaintiff Dale alleges she was the victim of identity theft as a result of the Data Breach, and all Plaintiffs allege their damages include "out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII," as well as time spent dealing with the Data Breach and its consequences. *See* FAC ¶¶

28, 84. These allegations are sufficient at this stage of proceedings. *Lozada*, 2018 IL App (1st) 180320-U, ¶ 31 (holding "plaintiffs have sufficiently alleged actual damages in the form of compensation for identity theft"); *In re Gallagher*, 631 F. Supp. 3d at 587 ("Because all Plaintiffs plead some type of lost time, they have sufficiently pled economic injuries for the purposes of their implied contract claim.").

### E. Plaintiffs' Unjust Enrichment Claims Should Not Be Dismissed

"To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). Unjust enrichment "is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 137 Ill. App. 3d 84, 90–91 (1985). "A cause of action based upon unjust enrichment does not require fault or illegality on the part of defendants; the essence of the cause of action is that one party is enriched, and it would be unjust for that party to retain the enrichment." *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 864 (1998). As described herein, Plaintiffs' other claims are all adequately pleaded, and therefore their unjust enrichment claim similarly survives Rivers Casino's motion to dismiss. *See Doe v. Fertility Ctrs. of Ill.*, No. 21 C 579, 2022 U.S. Dist. LEXIS 59145, at *15 (N.D. Ill. Mar. 31, 2022).

Plaintiffs allege they conferred a benefit on Rivers Casino in the form of, *inter alia*, monies paid for services, including monies paid for data security services. FAC ¶¶ 123–24, 126. Plaintiffs further allege Rivers Casino unjustly and unlawfully retained the monies Plaintiffs paid for data

14

security services which they never received. *Id.* ¶¶ 126, 128. Thus, Plaintiffs have adequately stated a claim for unjust enrichment.

In *Doe*, this Court held an unjust enrichment claim was adequately pleaded where the plaintiff alleged the "[d]efendants were unjustly enriched in that she conferred a monetary benefit on them in the form of payment for health care services, part of those services included protecting her private information, [d]efendants failed to protect her information, and it therefore would be unjust for [d]efendants to retain the benefit of the payment." *Doe*, 2022 U.S. Dist. LEXIS 59145, at *14. In *Lozada*, an Illinois appellate court held similar allegations sufficient where "where "[p]laintiffs alleged that they conferred a benefit on [defendant] by paying for data security services; [defendant] accepted payment but did not to provide those services; it would be unjust for [defendant] to retain the conferred benefit; and [defendant's] retention of the conferred benefit violates principles of justice, equity, and good conscience." *Lozada*, 2018 IL App (1st) 180320-U, ¶ 37. Plaintiffs' unjust enrichment claim mirrors those held sufficient in *Doe* and *Lozada*, and therefore survive Rivers Casino's motion to dismiss. *See* FAC ¶¶ 121–28.

Rivers Casino asserts Plaintiffs' unjust enrichment claims fail because "[Rivers Casino]'s collection of Plaintiffs' data was incidental to the gaming services it provided them," and thus it did not unjustly retain any benefit provided by Plaintiffs. Mot. at 15–16. But Rivers Casino misstates Plaintiffs' claims. Plaintiffs do not allege merely that Rivers Casino's retention of their personal information was unjust. Rather, they allege they paid monies to Rivers Casino for services including data protection services. *See, e.g.*, FAC ¶ 125. Thus, Plaintiffs allege it is unjust for Rivers Casino to "retain the money belonging to Plaintiffs and Class members because Rivers Casino failed to adequately implement the data privacy and security procedures for itself that Plaintiffs and Class members paid for." *Id.* ¶ 126. Plaintiffs gave money and their PII to Rivers

Casino with the expectation that Rivers Casino would protect their information, including by using a portion of the monies paid for Rivers Casino's services to provide data protection measures. These data protection measures were a vital aspect of the relationship between Plaintiffs and Rivers Casino. *E.g.*, *id.* ¶¶ 11, 18, 26, 34, 41, 116 (alleging Plaintiffs would not have sought services from Rivers Casino had they known Rivers Casino would not adequately protect their PII); *id.* ¶¶ 52–56 (discussing representations in Rivers Casino's Privacy Policy). The unjustly retained benefit is the money Plaintiffs and Class members paid for data security that they did not receive. *See id.* ¶ 126.

The cases Rivers Casino cites in support of its arguments are distinguishable. In *Flores*, the court dismissed the plaintiffs' unjust enrichment claim because "the payments of premiums for defendant's insurance services were made by plaintiffs' employers, not plaintiffs themselves, and therefore were not benefits conferred by plaintiffs." *Flores*, 2023 IL App (1st) 230140, ¶ 38. Here, Plaintiffs allege they paid Rivers Casino for data protection services they never received. FAC ¶ 126. The *Roper* court dismissed an unjust enrichment claim "based on the theory that Defendant has retained the benefit of Plaintiffs' [sensitive personal information]." *Roper v. Rise Interactive Media & Analytics, LLC*, No. 23 CV 1836, 2023 U.S. Dist. LEXIS 201955, at *17 (N.D. Ill. Nov. 9, 2023). Here, Plaintiffs' claim is predicated on the retention of the money Plaintiffs paid for data protection services they did not receive, not the retention of their PII itself. In *Irwin*, the court dismissed an unjust enrichment claim because the plaintiff "paid for food products . . . [not] a side order of data security and protection." *Irwin*, 175 F. Supp. 3d at 1072. Similarly, the *Perdue* plaintiffs' unjust enrichment claim was dismissed because the plaintiffs "ha[d] not alleged a benefit conferred in exchange for protection of their personal information." *Perdue v. Hy-Vee, Inc.*, 455

16

F. Supp. 3d at 766. Here, Plaintiffs specifically allege they paid for data protection services. *E.g.*, FAC ¶¶ 125–26.

### F.       Plaintiffs Adequately Plead Their Illinois Consumer Fraud Act Claims

The elements of an Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim are: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *In re VTech Data Breach Litig.*, No. 15 CV 10889, 2018 U.S. Dist. LEXIS 65060, at *19 (N.D. Ill. Apr. 18, 2018) (citations omitted). Plaintiffs allege Rivers Casino failed to provide adequate data security despite making explicit statements to its customers that it would, that Plaintiffs and class members purchased and received gaming services for personal, family, or household purposes, and that Plaintiffs and class members were harmed as a result of Rivers Casino's deceptive statements regarding its data security. FAC ¶¶ 129–137. Plaintiffs allege all elements of an ICFA claim. Plaintiffs also establish that Rivers Casino violated the IPIPA, which itself constitutes an unlawful practice under ICFA. *See* 815 ILCS 530/20; FAC ¶ 134.

Rivers Casino challenges Plaintiffs' ICFA claims by arguing "Plaintiffs do not allege actual, measurable, economic damages, only an increased risk of future harm." Mot. at 16–17. This specifically ignores the well-pleaded allegations made by Plaintiff Dale, who specifically alleges that "[a]s a result of the Data Breach, Plaintiff Dale has been the victim of identity theft. Between September and November of 2023, approximately twelve unauthorized charges appeared on Plaintiff Dale's debit card. In response to these fraudulent charges, Plaintiff Dale was forced to contact her bank, cancel her debit card, and request a new card be issued." FAC ¶ 28. The cancellation of her debit card, the wait for the reissuance, and the time spent without the use of her funds are an economic loss. Similar claims have been held sufficient to state an ICFA claim. *See*

17

*In re Gallagher*, 631 F.Supp.3d at 588; *see also Wittmeyer*, 2024 U.S. Dist. LEXIS 8803, at *18. Rivers Casino admits that injuries suffered by the other Plaintiffs are economic injuries, as required to state an ICFA claim. Mot. at 9–11, 16.

### G. Plaintiff Massud States a Claim Under the MMPA

#### 1. Plaintiff Massud was Injured by Violations of the MMPA in Missouri

Rivers Casino first attempts dismissal of Plaintiff Massud's claim under the Missouri Merchandise Practices Act ("MMPA") by arguing that because Plaintiff did not receive services (i.e., use of the casino), in Missouri, he cannot allege a violation of the MMPA "in or from the state of Missouri." See Mot. at 17 (quoting Mo. Rev. Stat. § 407.020(1)). However, the MMPA is "is broad enough to cover transactions taking place outside of Missouri." *See Korte v. Pinnacle Foods Grp., LLC*, No. 17-CV-199-SMY-SCW, 2018 U.S. Dist. LEXIS 50668, at *14–15 (S.D. Ill. Mar. 27, 2018) ("Additionally, at least one federal court has held that 'conduct originating outside Missouri that affects Missouri consumers is actionable' under the MMPA.'" (citation omitted)). Plaintiff Massud alleges that he relied on Rivers Casino's misleading statements regarding the adequacy of its data security when deciding whether to transact with Rivers Casino. The Court may infer that he did so from Missouri where he resides given that many of those representations were posted on Rivers Casino's website.[4] FAC ¶¶ 16, 18, 52–56. It may also be inferred from the Complaint that Plaintiff experienced targeted spam and received Rivers Casino's misleading notice letter at his home in Missouri. *Id.* ¶¶ 19–20; *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017) ("A claim is plausibly pleaded when its "factual context . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (omission in original)). Here, Plaintiff Massud also alleges that Rivers Casino's notice letter was inadequate

---

[4] The Privacy Policy applies to applies to "all users of Rivers Casino's services and all visitors to the Rivers Casino property." FAC ¶ 52.

and delayed, preventing him from mitigating the targeted spam and phishing attempts he received following the Data Breach. FAC ¶¶ 20, 60–61. Because Rivers Casino's failure to implement adequate data security and its deficient notice letter are logically connected, Plaintiff Massud has stated a claim under the MMPA. *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014) ("According to the statute, the unlawful action may occur at any time before, during or after the sale and by any person.").

### 2. Claims Under the MMPA Are Not Subject to a Heightened Pleading Standard

Rivers Casino's next argument, that Plaintiff Massud must satisfy Rule 9(b) to sustain his MMPA claim, is unsupported by Missouri law. *See* Mot. at 18. As the Missouri Court of Appeal explained when analyzing the elements of the MMPA:

> As relevant here, Section 407.020 includes misrepresentation, concealment, or omission of a material fact. The regulations under the MMPA define misrepresentation as "an assertion that is not in accord with the facts." Further, "knowledge that the assertion is false or misleading, intent . . . or any other capable mental state such as recklessness or negligence, are not elements of misrepresentation." "It is the defendant's conduct, not his intent, which determines whether a violation has occurred."

*Duncan v. Savannah, LLC*, 637 S.W.3d 633, 643 (Mo. Ct. App. 2021) (alterations in original) (citations omitted). The MMPA "supplements the definition of common law fraud, eliminating the need to prove an intent to defraud or reliance." *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. Ct. App. 2006). Moreover, Plaintiff Massud alleges that Rivers Casino not only affirmatively misrepresented the material facts regarding its data security, but that it also omitted critical facts. FAC ¶¶ 52–56, 60–61, 142–45. Under the MMPA "omission of a material fact is 'any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her.'" *Duncan*, 637 S.W.3d at 643 (citation omitted). Plaintiff has satisfied this requirement by alleging that Rivers Casino knew or should

have known of its data security deficiencies and the consequences that would result to Plaintiff Massud and Missouri Class members as a result of a cyberattack. FAC ¶¶ 62–83.

### 3. Plaintiff Massud Has Alleged Ascertainable Losses

Rivers Casino's final argument, that Plaintiff Massud has failed to allege ascertainable losses resulting from its violation of the MMPA similarly fails. *See* Mot. at 18–19. The MMPA specifically allows for benefit of the bargain damages and Plaintiff Massud has alleged that part of the money that he paid for Rivers Casino's services was intended to apply to adequate data security, which Rivers Casino did not have. *Compare* FAC ¶¶ 115–20, 125–26, *with Plubell v. Merck & Co.*, 289 S.W.3d 707, 715 (Mo. Ct. App. 2009) ("The [benefit of bargain] rule is part of our standard instructions for damages in misrepresentation cases. The rule is also applicable in MMPA cases to meet the element of ascertainable loss." (internal citations omitted)); *see also Schoenlein v. Routt Homes, Inc.*, 260 S.W.3d 852, 854 (Mo. Ct. App. 2008) (finding ascertainable loss under the MMPA where a purchase was represented to carry a warranty when the seller provided no such warranty).

## IV. Conclusion

For the foregoing reasons, Plaintiffs Michael Glebiv, Raymond Massud, Vicki Dale, Genevieve Borowski, and Donald Hess respectfully request that the Court deny Rivers Casino's motion to dismiss in its entirety. Should the Court grant any portion of Defendant's motion, Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend the Complaint.

Dated: May 10, 2024                     Respectfully submitted,

                                         /s/ Ben Barnow
                                         Ben Barnow
                                         Anthony L. Parkhill
                                         Riley W. Prince
                                         Nicholas W. Blue
                                         **BARNOW AND ASSOCIATES, P.C.**
                                         205 West Randolph Street, Suite 1630

Chicago, IL 60606
Tel: 312-621-2000
Fax: 312-641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com
rprince@barnowlaw.com
nblue@barnowlaw.com

*Attorneys for Plaintiffs Dale and Borowski*

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
Email: gklinger@milberg.com

*Attorney for Plaintiff Glebiv*

Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: 312-984-0000
Fax: 212-686-0114
malmstrom@whafh.com

*Attorney for Plaintiff Massud*

John D. Blythin
**ADEMI LLP**
3620 E. Layton Ave.
Cudahy, WI 53110
Tel: (414) 482-8000
Fax: (414) 482-8001

*Attorney for Plaintiff Hess*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 10, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Court via the Court's ECF/CM system, which will send notification to all counsel of record.

/s/ Ben Barnow
Ben Barnow