# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL GLEBIV, RAYMOND MASSUD, VICKI DALE, GENEVIEVE BOROWSKI, and DONALD HESS, individually and on behalf of all others similarly situated, ) ) ) ) ) ) ) | |
| Plaintiffs, ) | Case No. 23-cv-16225 |
| ) v. ) | Judge John Robert Blakey |
| ) MIDWEST GAMING & ENTERTAINMENT, LLC, d/b/a RIVERS CASINO DES PLAINES, ) ) ) ) ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Michael Glebiv, Raymond Massud, Vicki Dale, Genevieve Borowski, and Donald Hess sue Defendant Midwest Gaming & Entertainment, d/b/a Rivers Casino, on behalf of themselves and a putative class, alleging various claims stemming from an August 2023 cyberattack and data breach. *See* [20].[1] Defendant moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* [25], [26].

For the reasons set forth below, the Court grants in part, and denies in part, Defendant's motion.

---

[1] Plaintiffs' jurisdictional theory rests upon diversity and 18 U.S.C. § 1332(d)(2)(A). *see* [33].

I. **Complaint Allegations**

Plaintiffs allege the following facts.[2] Defendant Midwest Gaming & Entertainment, LLC, d/b/a Rivers Casino Des Plaines, operates a casino and sportsbook, located in Des Plaines, Illinois. [20] ¶ 2. On August 12, 2023, an unauthorized third party gained access to Defendant's network system and obtained files containing employees' and customers' personal information (the "Data Breach"). *Id.* ¶ 3. Three months after the Data Breach, on November 16, 2023, Defendant began notifying its customers and employees that their personal information had been affected by the Data Breach. *Id.* ¶ 60.

Plaintiffs Glebiv, Massud, Dale, Borowski, and Hess allege they provided Defendant with their personally identifying information ("PII"), including names, contact information, dates of birth, driver's license, financial account numbers, tax identification numbers, Social Security numbers, and passport numbers, as a condition of receiving Defendant's gaming services. *Id.* ¶¶ 1, 8, 15, 23, 31, 38. Plaintiffs reside in several states, with Glebiv, Dale, and Borowski residing in Illinois, Massud residing in Missouri, and Hess residing in Wisconsin. *Id.* ¶¶ 7, 14, 22, 30, 37.

All plaintiffs allege they suffered injury in the form of: (1) a substantial and imminent risk of identity theft and medical identity theft; (2) the disclosure and loss of confidentiality of their PII; (3) deprivation of value of their PII; and (4) overpayment for services that did not adequate data security." *Id.* ¶¶ 13, 21, 29, 36,

---

[2] The Court draws the facts from Plaintiff's Consolidated Amended Complaint, [20], which will be taken as true for purposes of resolving the motion to dismiss. *See Killingsworth v. HSBC Bank Nevada,* 507 F.3d 614, 618 (7th Cir. 2007).

2

44. Additionally, Plaintiffs Massud and Hess both allege that since their PII was compromised in the Data Breach, both have received numerous emails and calls from scammers. *Id.* ¶¶ 20, 43. Finally, Plaintiff Dale alleges she has been the victim of identity theft, incurring twelve unauthorized charges on her debit card between September and November 2023, and ultimately forcing her to cancel her card and request a new card be issued. *Id.* ¶ 28.

Plaintiffs, on behalf of themselves and a putative class, sue Defendant for negligence (Count I), negligence *per se* (Count II), breach of implied contract (Count III), unjust enrichment (Count IV), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V), and violations of Missouri's Merchandising Practices Act (Count VI). Defendant moves to dismiss all claims for failure to state a claim under Rule 12(b)(6). *See* [25].

## II. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all inferences in the plaintiff's favor. *Esco v. City of Chicago*, 107 F.4th 673, 679 (7th Cir. 2024). Courts are not, however, "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and allege facts that are

3

"enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are not enough. *Id.* The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Esco*, 107 F.4th at 679 (citing *Twombly*, 550 U.S. at 555). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 556).

**III. Analysis**

Defendant moves to dismiss all of Plaintiffs' claims, and the Court considers the parties' arguments as to each of the claims below.

    **A.**    **Negligence**

In Illinois, to state a claim for negligence, a plaintiff must allege facts showing that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate cause of plaintiff's injuries.[3] *Flores v. Aon Corp.*, 242 N.E.3d 340, 353 (Ill. App. Ct. 2023). Here, Defendant argues there is no common law duty to safeguard personal information against third-party attacks, that Plaintiffs' injuries do not support a negligence claim, and that Plaintiffs fail to allege their injuries were proximately caused by the cybersecurity incident.

In the wake of the Illinois legislature's 2017 amendment to the Personal

---

[3] Defendant argues that Illinois law governs Plaintiffs' common law claims. [26] at 3. Plaintiffs do not dispute the argument, and the Court finds that Illinois law applies to these claims.

Information Protection Act ("PIPA"), the "vast majority of district courts" in the 7th Circuit to have considered the issue "have found that there is a duty under Illinois law to safeguard personal information in the data breach context." *In re Lurie Children's Hospital Data Security Litigation*, No. 24-cv-05503, 2025 WL 2754760, at \*9 (N.D. Ill. Sept. 27, 2025) (collecting cases). The 2017 PIPA amendment required data collectors to "implement and maintain reasonable security measures" to protect personal information, reflecting a legislative intent to impose a duty. *Id.*, *see also Wittmeyer v. Heartland Alliance for Human Needs & Rights*, No. 23 CV 1108, 2024 WL 182211, at \*2 (N.D. Ill. Jan. 17, 2024) (declining to dismiss a negligence claim, finding that defendant owed a duty to plaintiffs "to safeguard their personal information."). Here, that same duty applies to Defendant to safeguard Plaintiffs' personal information.

Defendant also argues that Plaintiffs' alleged injuries amount to allegations of mere increased risks of harm, and do not support a negligence claim. [26] at 6. Yet Plaintiffs allege actual injuries that extend beyond just a mere increased risk of identity theft. Plaintiffs also allege "lost opportunity costs" from "attempting to mitigate the actual and future consequences of the Data Breach," and a series of fraudulent charges on Plaintiff Dale's debit card. [20] ¶¶ 28, 102. These alleged injuries are sufficient to satisfy standing. *See also Flores*, 242 N.E.3d at 352 (holding allegations of fraudulent charges and lost time were "distinct and palpable injuries that satisfy standing.").

Defendant also argues that Plaintiffs lack standing because they did not

actually lose money from the unauthorized fraudulent charges. [26] at 8. But "the fact that alleged fraudulent charges were unsuccessful is immaterial and does not stop them from being actual injuries" for purposes of standing. *Flores*, 242 N.E.3d at 352. Here, Plaintiffs' alleged injuries are sufficient to establish standing.

Finally, Defendant argues that Plaintiffs fail to make "any" plausible allegation that Defendant's conduct was the proximate cause of their alleged injuries. [26] at 9. Defendant claims Plaintiffs never alleged they provided their payment information to Defendant, or that those payment card numbers were impacted. *Id.* But at this stage, Plaintiffs need not make allegations with that level of specificity.

First, it is "foreseeable that a failure to maintain reasonable security measures would allow unauthorized third parties to gain access" to personal information, and that a breach of that information would "cause injury to the individuals that the personal information belongs to." *Flores*, 242 N.E.3d at 354. For instance, in *Flores*, the plaintiffs alleged they carefully safeguarded their personal information but experienced spam messages, targeted marketing, and fraudulent charges after the data breach. *Id.* The plaintiffs also alleged the data breach was the cause of those injuries because the stolen information was used to cross-reference other information to compile "Fullz" packages which further enable identity theft and fraud. *Id.* There, the court held the allegations of proximate cause were "sufficient at the pleading stage." *Id.*

Similarly, in *Olson v. Ferrara Candy Co.*, the plaintiffs successfully alleged proximate cause upon pleading they were unaware of any other incidents whereby

6

fraudulent actors would have obtained their personal information, the unauthorized charges occurred only two months after the data breach, and that cybercriminals could use the information from the data breach to compile Fullz packages. 2025 WL 1750241, at *8 (Ill. App. Ct. 2025).

Here, Plaintiffs alleged Defendant knew its stored personal information remained a valuable target for malicious actors. [20] ¶¶ 62–63. Plaintiffs also alleged Defendant "failed to implement and maintain reasonable and appropriate data privacy and security measures" to protect Plaintiffs' personal information. *Id.* ¶ 62. Due to Defendant's alleged failure to "design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate" security systems, it was "reasonably foreseeable" that a breach would result. *Id.* ¶ 100. Additionally, Plaintiffs allege they each take great care to protect their personal information, and that the alleged increase in targeted scam attempts and the fraudulent charges occurred in just the three months following the data breach. *Id.* ¶¶ 26, 28. And, like the plaintiffs in *Ferrara*, Plaintiffs also allege here that the stolen personal information is easily compiled into "Fullz" packages enabling further identity theft and fraud attempts, even if certain information like credit card numbers are not the subject of the data breach. *Id.* ¶¶ 77–79. Plaintiffs' allegations, taken together, adequately establish proximate cause at the pleading stage.

In the alternative, Defendant argues Plaintiffs' negligence claim is barred by the economic loss doctrine. The economic loss doctrine "bars tort recovery for purely economic losses based on the failure to perform contractual obligations." *Wittmeyer*,

2024 WL 182211, at *3. Economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.*

In the context of data breaches, however, the Illinois Appellate Court has limited application of the economic loss doctrine where there is "no express contract defining the defendant's obligation to safeguard the plaintiff's data." *Id.* citing *Flores*, 242 N.E.3d at 360–61. Here, Plaintiffs do not allege an express contract between the parties. Thus, the economic loss doctrine does not preclude Plaintiffs from asserting a negligence claim.

As such, the Court denies Defendant's motion as to Count I.

**B.  Negligence *Per Se***

Defendant argues that Plaintiffs' negligence *per se* count must also be dismissed because violations of PIPA and the Federal Trade Commission Act ("FTC") do not support a claim of negligence *per se*. A violation of a statute only constitutes negligence *per se* "if the legislature clearly intends for the act to impose strict liability." *Flores*, 242 N.E.3d at 355.

Courts regularly reject claims of negligence *per se* predicated upon violations of the FTC. In *Flores*, the court wrote it could "find no support for the notion that the legislature clearly intended to impose strict liability for FTC Act violations," dismissing plaintiffs' negligence *per se* claim. 242 N.E.3d at 355. Similarly, in *In re Lurie Children's Hospital Data Security Litigation*, the court wrote there was no indication the legislature intended the FTC to impose strict liability, dismissing

8

plaintiffs' negligence *per se* claim. 2025 WL 2754760, at *10; *see also Wittmeyer*, 2024 WL 182211, at *4 ("The plaintiffs ... do not allege that either the [FTC Act] or HIPAA imposes strict liability; nor does the Court have any authority before it that would support a finding of strict liability."). Plaintiffs also cite to no authority showing PIPA may impose strict liability. In their Response, Plaintiffs merely cite to the *Flores* case and PIPA's statutory text, noting that PIPA now imposes a duty to implement and maintain reasonable security measures to protect personal information. [31] at 10–11. Yet this falls far short of showing the Illinois legislature intended for PIPA to impose the strict liability necessary to support a negligence *per se* claim.

Accordingly, the Court dismisses Plaintiffs' negligence *per se* claim.

    **C.**    **Breach of Implied Contract**

Plaintiffs allege they entered into an implied contract with Defendant where Defendant would use reasonable security measures to protect Plaintiffs' PII in return for Plaintiffs providing Defendant with that PII. Defendant argues Plaintiffs failed to allege the existence of an implied contract, and that Plaintiffs do not allege actionable damages.

To be sure, an implied contract can be created by parties' actions under Illinois law, even where no express contract exists between them, provided the facts and circumstances must demonstrate the parties' intent to be bound to imply a contract. *Id. Flores*, 242 N.E.3d at 355. In the data privacy context, Illinois courts have also repeatedly found an implied contract where defendants made representations in their privacy policies that they would safeguard plaintiffs' PII using reasonable security

9

measures. *Id.*; *Doe v. Fertility Ctr. of Ill., S.C.*, No. 21 C 579, 2022 WL 972295, at *4 (N.D. Ill. Mar. 31, 2022); *Lozada v. Advocate Health & Hosp. Corp.*, 2018 WL 7080045, at *6 (Ill. App. Ct. 2018); *Olson v. Ferrara Candy Co.*, 2025 WL 1750241, at *11. Even general commitments to protecting personal information in a defendant's privacy policy can support an inference of an implied promise. *In re Lurie Children's Hospital Data Security Litigation*, 2025 WL 2754760, at *12. It is further implied from the parties' relationship that Defendant would take reasonable steps to ensure plaintiffs' personal information would be protected from unauthorized disclosure. *Flores*, 242 N.E.3d at 355. Here, Plaintiffs adequately alleged Defendant's Privacy Policy contained assurances that Defendant would use "suitable safeguards to protect the privacy and security" of Plaintiffs' personal information, creating an implied contract. [20] ¶ 56.

Despite this, Plaintiffs' claim must still be dismissed because Plaintiffs do not allege any actionable damages flowing from a breach of that implied contract. To successfully plead a breach of implied contract claim, a plaintiff must allege actual monetary damages. *Flores*, 242 N.E.3d at 356. Plaintiffs' alleged injuries "while sufficient to establish standing, do not amount to actual monetary damages." *Id.* Specifically, Plaintiffs fail to allege they spent money mitigating the harm from the exposure of their personal information, or other losses or expenditure flowing from the Data Breach. Rather, Plaintiffs' alleged injuries remain predicated upon the diminution of value of their personal information, an increased risk of future harm, a lost benefit-of-the-bargain theory, or lost time. [20] ¶¶ 13, 21, 28, 29, 36, 44. Illinois

10

courts have declined to recognize such injuries as monetary damages for a breach of implied contract claim. *Flores*, 242 N.E.3d at 356; *Lozada*, 2018 WL 7080045, at *7.

Without actual monetary damages, Plaintiffs' breach of implied contract claim must be dismissed.

### D. Plaintiffs' Unjust Enrichment Claim

Plaintiffs allege a claim for unjust enrichment, as an alternative to their breach of implied contract claim.[4] Plaintiffs allege they conferred benefit upon Defendant in the form of their employment with Defendant, money paid for gaming services, and the provision of their personal information. [20] ¶ 123. Plaintiffs argue that Defendant should not be permitted to retain the full value of these benefits due to the alleged failure to protect Plaintiffs' personal information.

Here, none of Plaintiffs' theories of unjust enrichment are actionable. For instance, the labor provided for Defendant does not satisfy this requirement. Though Plaintiffs do not specifically allege any of the named plaintiffs were employed by Defendant, any plaintiff who had been employed by Defendant would have been "adequately compensated" through their wages. *Id.* Similarly, Plaintiffs' personal information "was not the payment" for Defendant's gaming services. *Id.* Courts routinely reject the "proposition that an individual's personal identifying information has an independent monetary value." *In re Arthur J. Gallagher Data Breach Litigation*, 631 F.Supp.3d 573, 592 (N.D. Ill. 2022) (dismissing an unjust enrichment

---

[4] To state a claim for unjust enrichment, plaintiffs must allege that the defendant "has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience." *Flores*, 242 N.E.3d at 356.

11

claim where plaintiffs alleged defendant retained the benefit of plaintiffs' personal information). Instead, Defendant "incidentally received plaintiffs' personal information as an administrative necessity for providing" gaming services. *Flores*, 242 N.E.3d at 356. Finally, any monetary benefit Plaintiffs conferred upon Defendant was for gaming services, and Plaintiffs do not allege there was "any separate outlay for data security." *In re Lurie Children's Hospital Data Security Litigation*, 2025 WL 2754760, at *12; *Perdue v. Hy-Bee, Inc.*, 455 F.Supp.3d 749, 766 (C.D. Ill. 2020) ("Plaintiffs have not alleged that any specific portion of their payments went toward data protection; rather, they state that their payments were for food and gas. Additionally, Plaintiffs have not alleged a benefit conferred in exchange for protection of their personal information."); *Irwin v. Jimmy John's Franchise, LLC*, 175 F.Supp.3d 1064, 1072 (C.D. Ill. 2016) (plaintiff "paid for food products. She did not pay for a side order of data security and protection").

Thus, Plaintiffs' unjust enrichment claim must be dismissed.

**E.     ICFA**

Plaintiffs allege that Defendant violated the Illinois Consumer Fraud Act ("ICFA") by failing to implement reasonably secure data security policies, and by failing to notify Plaintiffs of the data breach in a timely manner despite its PIPA obligations. [20] ¶¶ 132–35.

**a. Unfair Practice**

Plaintiffs allege Defendants engaged in an unfair practice under the ICFA "by failing to implement and maintain reasonable security measures to protect and

secure" its customers' PII in a manner that "complied with applicable laws, regulations, and industry standards." *Id.* ¶ 132. To determine whether a practice is unfair under the ICFA, courts consider whether the practice: (1) offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous, and (3) whether it causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). Plaintiffs need not satisfy all three criteria to support a finding of unfairness. *Id.* A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. *Id.*

In *In re Michaels Store Pin Pad Litigation*, plaintiffs alleged defendant failed to comply with industry best practices, requiring the use of tamper-resistant PIN pads and with additional security requirements. 830 F.Supp.2d 518, 526 (N.D. Ill. 2011). Plaintiffs further alleged that defendant failed to promptly notify consumers of a security breach. *Id.* There, the court wrote that plaintiffs plausibly alleged defendant engaged in an unfair practice under the ICFA because plaintiffs' allegations showed that defendant "ignored its obligation to implement procedures and practices preventing the criminal conduct." *Id.* Additionally, the court wrote that a lack of reasonable security protections could constitute an unfair practice because it "causes substantial injury to consumers," while a failure to give prompt notice could cause "widespread and serious harm to other companies and to innumerable consumers." *Id.* citing *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 496 (1st Cir. 2009). Similarly, in *Worix v. MedAssets, Inc.*, plaintiff alleged defendant failed to implement adequate safeguards to protect his personal information, and to notify

13

him properly when a computer hard drive containing that information was stolen. 869 F.Supp.2d 893, 895 (N.D. Ill. 2012). There, the court also concluded the plaintiff "adequately alleged an unfair practice under the ICFA." *Id.* at 900.

Like the plaintiffs in *In re Michaels Store Pin Pad Litigation* and *Worix*, Plaintiffs here allege Defendant failed to implement reasonable security measures that conformed to applicable laws, regulations, and industry standards. The potential risk from a data breach could cause the same substantial injury to consumers, while delayed notification could magnify that injury further.

Thus, Plaintiffs adequately state a claim for an unfair practice under the ICFA.

### b. PIPA

Plaintiffs also pursue an ICFA claim under a second theory, alleging Defendant violated PIPA's requirement that Defendant timely notify those affected by a data breach "in the most expedient time possible and without unreasonable delay." [20] ¶ 135; 815 ILCS 530/10(a). PIPA itself does not provide for a private cause of action, but instead makes violations actionable under the ICFA. *In re Lurie Children's Hospital Data Security Litigation*, 2025 WL 2754760, at *13. For present purposes, "timeliness of notice cannot be resolved at the pleading stage." *Id.* at *14. It is plausible that Defendant's three-month delay before notifying Plaintiffs of the Data Breach was unreasonable. *Id.* ("it is at least plausible that the five-month delay was unreasonable."); *In re Solara Medical Supplies, LLC Customer Data Security Breach Litigation*, 613 F.Supp.3d 1284, 1307 (S.D. Cal. 2020) (holding plaintiff sufficiently alleged unreasonable delay where defendant did not notify him of security

14

incident until nearly five months after it occurred.).

Here, Plaintiffs have also adequately alleged unreasonable delay under PIPA.

### c. Damages

The ICFA provides remedies for purely economic injuries, and a failure to allege specific economic damages precludes a claim brought under the ICFA. *Flores*, 242 N.E.3d at 357. Because the PIPA violation is brought under the ICFA, Plaintiffs must also adequately allege actual, economic damages. *Id.* To survive a motion to dismiss an ICFA claim, Plaintiffs must allege actual pecuniary loss.

Here, Plaintiffs claim they have lost property "in the form of their PII" and will "spend time or money to protect against identity theft." [20] ¶ 136. Plaintiffs also allege they are now at a "higher risk of identity theft and other crimes." *Id.* None of these are specific economic damages required for an ICFA claim. The diminution of the value of personal information is not a specific economic injury. *Flores*, 242 N.E.3d at 357–58. An increased risk of future harm is also not an injury itself under the ICFA. *Id.* Finally, that Plaintiffs might, in the future, spend time or money to protect against identity theft is also not a calculable actual injury now. *Id.*; *Williams v. Manchester*, 888 N.E.2d 1, 13 (Ill. 2008) ("an increased risk of future harm is an element of damages that can be recovered for a present injury—it is *not* the injury itself.").

While Plaintiffs' diminution of value and increased risk allegations fail, Plaintiff Dale also alleged she experienced fraudulent charges on her debit card. [20] ¶ 28. This represents lost economic value. *In re Arthur J. Gallagher Data Breach*

*Litigation*, 631 F.Supp.3d at 588 (holding fraudulent charges on plaintiff's credit card constituted economic injury under the ICFA); *see also Wittmeyer*, 2024 WL 182211, at *6 (writing that fraudulent charges would be "real and measurable" losses under the ICFA).

As such, Plaintiff Dale may pursue the plausible claim that Defendant's delayed notice caused her harm, but the remaining Plaintiffs' claims under the ICFA are dismissed. Count V may proceed only as to Plaintiff Dale.

### D. MMPA

Finally, Plaintiffs allege Defendant violated the Missouri Merchandise Practices Act ("MMPA") as to Plaintiff Massud by "employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of material facts regarding its inadequate data security." [20] ¶ 142. The allegation that Defendant engaged in "fraud" and "deceptive acts" as an MMPA violation is a claim that sounds in fraud, and thus it must be pleaded with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017); *see also OmegaGenesis Corp. v. Mayo Found. for Med. Educ. and Rsch.*, 851 F.3d 800, 804 (8th Cir. 2017). Despite Plaintiffs' insistence to the contrary, "numerous district judges in Missouri have held that Rule 9(b) applies to MMPA claims, particularly those that," as is the case here, are "fraud-like in that they are based on misrepresentations and omissions." *Craggs v. Fast Lane Car Wash & Lube, L.L.C.*, 402 F.Supp.3d 605 (W.D. Mo. 2019); [31] at 19. In *Kuhns*, plaintiffs alleged the defendant engaged in "fraudulent and deceptive acts

16

and omissions" from its "failure to properly implement adequate, commercially reasonable security measures," its failure to warn plaintiffs their information was at risk, and its failure to immediately notify affected customers of a data breach. 868 F.3d at 719. The court in *Kuhns* wrote that such allegations were "not pleaded with the particularity required" by Rule 9(b), affirming the dismissal of the claim. *Id.*

Here, Plaintiffs make near identical allegations, without the necessary "who, what, when, where, and how surrounding the alleged fraud," only alleging generally that Defendant's Privacy Policy was untrue. *OmegaGenesis*, 851 F.3d at 804.

Without more specificity as to the representations forming the basis for this claim, Plaintiffs' MMPA claim must also be dismissed.

### IV. Conclusion

For the reasons explained above, this Court grants in part, and denies in part, Defendant's motion to dismiss, [25]. Namely, the Court grants Defendants' motion to dismiss the claims for negligence *per se* (Count II), breach of implied contract (Count III), unjust enrichment (Count IV), violations of the ICFA as to Plaintiffs Glebiv, Massud, Borowski, and Hess (Count V), and violations of Missouri's Merchandising Practices Act (Count VI), but denies the motion as to negligence (Count I), and violations of the ICFA as to Plaintiff Dale (Count V).

Dated: March 2, 2026               Entered:

                                                   _____
                                                   John Robert Blakey
                                                   United States District Judge